IN MATTER OF COMMISSIONERS TO DRAIN THE GREAT MEADOWS, ON PEQUEST RIVER.

1. The act of March 8th, 1871, for the drainage of lands, is a scheme for the public good, and the rights of eminent domain and taxation may be employed in the execution of its purpose.

2. Special assessments upon the lands of individuals, for drainage under this act, can only be made where the benefit is actually received or demonstrably certain.

3. Section 2 of the supplement of 1874 enacts that, before the work is finished, the commissioners may assess the expenses on the lands benefited or intended to be benefited. *Held*, where, by the testimony, such intended benefits are speculative and doubtful, the lands of objectors cannot be assessed under this section.

The Crane Iron Company and Mary V. Wurts filed their respective objections to the assessments made by the commissioners upon their lands in Warren county, under Section 2 of the act to provide for the drainage of lands, approved March 8th, 1871, and Section 2 of the supplement, approved March 19th, 1874. The assessment against the Crane Iron Company amounts to $1232.46, and against Mary V. Wurts, $13,247.84.

The reasons assigned by the objectors appear in the opinion of the court.

Argued at February Term, 1877, before Justices DEPUE, VAN SYCKEL and SCUDDER.

For the objectors, *J. G. Shipman.*

For the commissioners, *J. Vanatta.*

The opinion of the court was delivered by

SCUDDER, J.   The act of March 8th, 1871, provides for the drainage of lands subject to overflow from freshets, or which are usually in a low, marshy, boggy or wet condition, exclusive of salt marshes or lands flowed by tide waters.

That the legislature have the power to enforce the improvement of such lands, not for the advantage of the owners only, but for sanitary ends, and for the public good in adding to the area of tillable and productive soil, is well established. Special assessments for drains, levees, sewers and culverts, by which large tracts of land are protected from overflow and relieved from excessive moisture, have been frequently authorized by legislation in this country and elsewhere. *Cooley on Taxation* 423.

That the legislature have the right to determine the public utility of such schemes, and, in their execution, to employ the rights of eminent domain. and of taxation, was expressly decided in *Tide Water Company* v. *Coster*, 3 *C. E. Green* 518.

The act of March 8th, 1871, was approved, in its general principles, in *Matter of Drainage of Lands in Lower Chatham, &c ,* 6 *Vroom* 497.   The objectors in this case cannot, therefore, stand on this ground in opposing the constitutionality of this statute.

There are other reasons urged against these assessments, which will be considered.

The board of managers of the geological survey, on the application of five or more owners of separate lots of land in the great meadows on the Pequest river, in Warren and Sussex counties, have made surveys, adopted a system of drainage, prepared maps and made a report of the same to this court.   Three commissioners have been appointed by the court to carry out and execute this system of drainage.   No remonstrance was filed, in writing, by a majority of the owners of the lands affected, and the commissioners having taken the oath prescribed by the act, and filed the same, proceeded to drain these meadows, in accordance with the general plan of the board of managers.   Section 2 of the act of 1871 pre--

scribes that, *after the completion of said work*, the expenses and materials used shall be made up by said commissioners and returned to the Supreme Court in a report to be made by them, together with a general outline, description or delineation of the lands and territory which, in their judgment, ought to contribute to the said expense. Provision is made for assessments upon the lands contained within the territory reported by the commissioners, *in proportion, as near as they can judge, to the benefit derived from said drainage by the several parcels of land to be assessed.*

Section 5 enacts that, to enable the commissioners to raise the necessary moneys to carry on the work of draining the lands, they may borrow money, giving their bonds, as such commissioners, therefor, without personal liability, and pledge, for the re-payment, the assessment to be made as above named.

These are the general features of this act, so far as they are relevant to this case.

It appears that there has been difficulty in raising money on the commissioners' bonds during the progress of the work under this act, and a supplement was passed by the legislature, March 9th, 1874, to meet this trouble. Section 2 enacts that if the commissioners, after having commenced the drainage of such tract and proceeded therewith, shall, before the drainage of the same shall be completed, be compelled to suspend the completion thereof, from any inability at that time to raise the money required therefor, they shall proceed to ascertain the tracts of land benefited, or *intended to be benefited*, by said drainage, and the relative proportions in which the said respective tracts have been or will be benefited thereby, and also the expenses already incurred in said drainage, and, as near as may be, the additional expenses required for the completion thereof, which expenses they shall assess on the respective tracts of land, make report to the Supreme Court, and, when confirmed, collect in the manner prescribed in the former act, either at one time or at different times, in such instalments as may be required for the payment of said

expenses, and apply the money so collected to the payment thereof.

The important difference between these two sections, numbered two in the original act and the supplement, is, that in the former the assessment is made after the work is completed, when the amount of the expenses is determined, and when the land benefited is designated and ascertained, while in the latter the assessment is to be made before the completion—during the progress—of the work, for lands benefited or *intended to be benefited* by the drainage, for expenses incurred, and, as near as may be, the additional expenses required for the completion.

The radical defect of this section, in my judgment, is, that land-owners may be assessed for intended benefits which will never be realized. The work may never be completed, or, if completed, may not benefit their lands. The result may be that they will be compelled to pay for the experiment of the projectors, and for speculative or visionary benefits. The original act avoided this by waiting until the work was completed, so that the benefit was demonstrated.

Since the cases of *State, Agens, pros.,* v. *Newark,* 8 *Vroom* 415; *Passaic* v. *Del., Lack. & W. R. R. Co.,* 8 *Vroom* 538, and other cases holding the same principle, it has been settled that special assessments for improvements must not exceed the benefits conferred; and where there are no benefits there can be no special assessments.

Mere speculative benefits are not, in reality, benefits. After the experience we have had of the disastrous results of many schemes of public improvement in burdening our citizens with taxation without adequate benefit, it is manifest that our courts have determined to keep them strictly within constitutional limitations. There are cases holding that assessments may be made for improvements during the progress of the work, (*Cooley on Taxation* 462), for the very purpose that has induced the legislature to pass this supplemental section, that the money may be convenient to pay for the improvements as they progress, and to avoid the difficulty of

borrowing or advancing the money. There may be no objection to this method of assessment in such improvements as paving and grading streets and building sewers, because the results are obvious and certain if the work be finished; but upon this no opinion is expressed, and it is contrary to the usual course of our legislation. It is, however, a very different case when it is applied to the drainage of a large tract of land.

The project in the present case is to cut away reefs of rocks, and to clear out the bed of the Pequest river, so that a lower level may drain the wet and boggy lands in the meadows about it, and carry off the freshets more rapidly. But how far back from the river will such drainage be effectual? This will depend much upon the character of the soil, the springs, the levels, the proper location of lateral drains, and other conditions, which can only be ascertained after the completion of the work. A very careful survey and map of these meadows have been made, covering about six thousand acres of land, under the direction of the managers of the geological survey of the state. It is no disparagement to the skill of these worthy gentlemen to say that they may be mistaken in the results of this attempted drainage, from causes which they cannot foresee. The consequence may be that these objectors will be compelled to pay for expenses incurred against their will, where no benefits are received. The projectors of this drainage have no right to impose this burden on the land-owners. A contribution towards the expenses of draining these meadows can only be legally demanded where the benefit is actually received or demonstrably certain. The lands of the Crane Iron Company are mapped in two small tracts, (numbers 34 and 35) containing sixty-five and forty-seven hundredths acres, with lands of others intervening between them and the Pequest river. The mapped lands of Mary V. Wurts comprise six hundred and sixty-four and eighty-eight hundredths acres, lying on both sides of the Pequest and extending some distance back from the same. Nearly all the testimony taken is directed to the

points whether much of these lands is wet and needs drain-ing, and whether they will be appreciably benefited by the contemplated scheme for drainage.

The effect of this conflicting evidence is to leave the mind in doubt. This uncertainty is not a proper basis of assess-ments for benefits. It can be made reasonably certain by the completion of the work. If it be said that this imposes on others the burden, in the first instance, of making the im-provement of these lands, the answer is, that the projectors, and those who desire this drainage, should take the risk of success and not those who are unwilling. It is but an argu-ment *ab inconvenienti*, which does not establish the right. If the assessment is made, according to the second section of the original act, after the work is completed, the objections made in this case can be definitely settled. But as the assessment made under the second section of the supplement of 1874, may result in taking private property without compensation, it is void, and the assessment made against these objectors, by its authority, is set aside, but without costs.